**Shannon Eugene MOSES, Appellant,**

v.

**The STATE of Texas.**

**No. 2093–01.**

Court of Criminal Appeals of Texas.

May 21, 2003.

*State*, 966 S.W.2d 511, 519 (Tex.Crim.App. 1998).

John S. Butler, Austin, for appellant.

William J. Delmore, III, Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for state

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

Appellant was charged with the offense of bribery. Texas Penal Code § 36.02(a)(1). A jury found him guilty and punishment was assessed at five years imprisonment, probated, and a fine of $800. Appellant appealed the trial court's admission of extraneous offense evidence. The Court of Appeals held that the testimony regarding extraneous offenses was improperly admitted and reversed the judgment of the trial court. *Moses v. State*, No. 14–99–00377–CR, 2001 WL 931179, 2001 Tex. App. LEXIS 5604 (Houston [14th Dist.] August 16, 2001) (not designated for publication). We granted review to determine whether the Court of Appeals erred in holding that an extraneous offense was not admissible to rebut the defensive theory that police officers fabricated the existence of the charged offense in order to retaliate against appellant for his role in a controversy involving other police officers. We hold that the ruling of the trial court was within the zone of reasonable disagreement and the Court of Appeals erred in holding that the trial court abused its discretion in admitting the extraneous offense evidence.

**Facts**

Appellant was a self-employed tow truck driver. According to the procedure of the Harris County Sheriff's Department, when a car needs to be towed from the scene of an accident or arrest and the owner of the vehicle does not request a particular wrecker company, a general call is sent out over the police radio, which is monitored by the tow truck drivers. The first wrecker to arrive gets the job. If two or more wreckers arrive at the same time, then each driver puts his wrecker license in a hat and they draw lots to determine who gets the job. According to Deputy J. Blackledge, who is a peace officer with Harris County Constable Precinct Four, on April 7, 1998, appellant offered to give him ten percent of the towing fee if he would falsely broadcast over the police radio that appellant had been specifically requested by the owner of the car to be towed. Blackledge refused the offer and reported the incident to his supervisor, but did not submit a written report at that time due to a scheduling conflict.[1]

Appellant again approached Blackledge on May 12, 1998 and offered to purchase him a cellular telephone and pay the monthly fee if he would use the cellular telephone to call appellant before sending out a general broadcast over the radio. This would allow appellant to be the first to arrive and thus he would get the towing job. Blackledge reported this incident to his supervisor and subsequently submitted a written report documenting both the April 7 and May 12 incidents. No charges were filed against appellant at that time.

Later that month,[2] appellant's wife, Dawn Moses, who was previously em-

---

1. The scheduling conflict involved access to the computer system that is used by the precinct to file written reports.

2. It is unclear from the record whether the incident about which Dawn Moses complained was on May 27 or May 29, 1998.

ployed as a deputy, complained that the calls for tow trucks were being handled improperly by some members of Precinct Four. Specifically, she stated that one deputy called his son, who was a tow truck driver, and gave him the location of a car to be towed rather than sending out a general call over the police radio. Mrs. Moses did not file a formal complaint, but she discussed the incident with a lieutenant.

Then, on June 9, 1998, charges were filed against appellant for the May 12 bribery of Deputy Blackledge. Appellant denied the allegations and claimed that the offense was fabricated and charges were filed in retaliation for his wife's complaint against other members of the constable's office.

At trial, the State offered evidence of two extraneous offenses under Rule 404(b)[3] to rebut the defense theory of retaliation. Appellant objected to the testimony, stating that: the testimony was not relevant to the charged offense, the extraneous offenses were not sufficiently similar to the charged offense, and the prejudice outweighed the probative value and may confuse or mislead the jury. The State argued that the extraneous offenses rebut the defense contention that the State created the charges relating to the May 12 offense. The trial court overruled appellant's objection, finding that the two extraneous offenses proffered by the State were relevant to rebut the defensive theory of retaliation and that any prejudice was substantially outweighed by their probative value. Deputy Blackledge then testified regarding the April 7 incident, when appellant offered him ten percent of the towing fee if he would specifically request appellant's wrecker service. Deputy Steve Spoon also offered testimony regarding a similar conversation with appellant which

occurred on March 6. The court gave the proper limiting instruction to the jury both at the time of the testimony and in the jury charge. Appellant appealed the admission of the extraneous offenses.

## Court of Appeals

The Court of Appeals held that the trial court abused its discretion in admitting the extraneous offense evidence. It reasoned that the testimony regarding two prior bribery attempts did not rebut the defense contention that the charges were fabricated and filed in retaliation for complaints made by appellant's wife. *Moses*, 2001 WL 931179 at *4, 2001 Tex.App. LEXIS 5604 at *11. The court rejected the State's argument that the extraneous offenses explained the delay in filing the charges and held that the evidence of prior bribery attempts was not relevant apart from showing character conformity. *Id.* at *3, 2001 Tex.App. LEXIS 5604 at *9. Additionally, the court stated that the probative value of the extraneous offense evidence was outweighed by its prejudicial effect. *Id.* at *3, 2001 Tex.App. LEXIS 5604 at *10–11.

The State argues that the Court of Appeals erred in reversing the judgment of the trial court. The State contends that the extraneous offenses rebut the defense theory that Blackledge fabricated the charged offense in order to retaliate against appellant for his role in a separate controversy. The investigation into the extraneous bribery offenses began before appellant's wife's complaint, which was the supposed motive for the retaliation. According to the State, testimony regarding the previous bribery attempts and the ongoing investigation indicated that the charged offense was not contrived. Finally, because the extraneous offenses were

---

3. All future references to Rules refer to Texas Rules of Evidence.

reported by two different officers, neither of whom were involved in the incident complained of by appellant's wife, the State asserts that it is unlikely that one of the officers fabricated the charged offense. The extraneous offense evidence thus had probative value other than to show that appellant acted in conformity with his character for committing bribery.

Appellant responds that the Court of Appeals correctly held that the extraneous offense evidence had no relevance apart from character conformity. The testimony regarding previous acts of bribery did not rebut the defensive theory that the offense was fabricated because, according to appellant, if the deputies fabricated the charged offense, then they could have also fabricated the extraneous offenses. Finally, appellant contends that the Court of Appeals reviewed the record and determined that the extraneous offenses had no probative value beyond character conformity. Thus, the Court of Appeals properly found that it was an abuse of discretion for the trial court to admit the extraneous offense evidence.

### Rules of Evidence

Under Rule 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. However, even relevant evidence may not be admissible for every purpose. Because our system of justice recognizes that a defendant should be tried only for the charged crime and not for his criminal propensities, evidence of extraneous offenses is normally inadmissible. *See Robles v. State,* 85 S.W.3d 211,

213 (Tex.Crim.App.2002). However, Rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. For example, evidence of other crimes, wrongs or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation. *Rankin v. State,* 974 S.W.2d 707, 718 (Tex.Crim. App.1998), citing *Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (opinion on rehearing). Rebuttal of a defensive theory such as mistake or accident is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b).[4] And, under Rule 402, there is a presumption of admissibility of relevant evidence. However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery,* 810 S.W.2d at 387. In *Mozon v. State,* 991 S.W.2d 841 (Tex.Crim.App. 1999), this Court explained the interaction between Rule 404 and Rule 403. We held that while evidence may be admissible under Rule 404, the trial court may exercise its discretion to exclude the evidence under Rule 403 if it determines that the probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 846. The trial court in this case determined that the extraneous offense evidence was relevant to rebut a defensive theory. The court then conducted a balancing test under Rule 403 and found "that the probative value substantially outweighs any prejudicial value."

---

**4.** *Crank v. State,* 761 S.W.2d 328, 341 (Tex. Crim.App.1988) ("probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory") *overruled on other grounds by Alford v. State,* 866 S.W.2d 619 (Tex.Crim.

App.1993). *See also Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972) ("Evidence of extraneous offenses committed by the accused has been held admissible ... to refute a defensive theory raised by the accused.")

## Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. That is to say, as long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm. *Montgomery*, 810 S.W.2d at 391. Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination. *Id.* When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference. Thus, the Court of Appeals cannot simply substitute its own decision for the trial court's.

> The appellate court should not conduct a de novo review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion."

*Id.* at 392, citing *United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir.1986).

## Discussion

There appear to be two different theories regarding the retaliation defense. One is that the charges against appellant were false, made up, or fabricated in retaliation for his wife's complaint. The other is based on the timing of the charge—that the charge was retaliatory because no charges were filed against appellant until after his wife accused some members of the precinct of mishandling the wrecker call procedure. The trial court found that the extraneous offenses were admissible to rebut appellant's claim that "they retaliated because we got some deputies in trouble." The Court of Appeals found that the prior offenses did not explain the delay in filing the charges until after appellant's wife's complaint. In other words, the fact that appellant had committed two prior uncharged acts of bribery did not rebut the defense contention that the timing of the bribery charge indicated that it was brought due to appellant's wife's complaint against members of the precinct. The trial court, however, allowed the extraneous offenses under the theory that the charges for the May 12 incident may have been brought because it was appellant's "third time to do a similar thing," which explains why charges were not filed for the two prior offenses. Evidence at trial indicated that on May 13, after Deputy Blackledge filed the report documenting the April 7 and May 12 incidents, the Internal Affairs Division began a general investigation of the bribery attempts. The March 6 incident between appellant and Deputy Spoon was also part of the Internal Affairs investigation. Thus, the delay in filing may also be explained by the ongoing investigation. The trial court's reasoning explains why charges were not filed for the two previous extraneous offenses but were filed for the May 12 offense, thus rebutting the defense theory that the charges were retaliatory. As a result, the trial court found that the extraneous offenses had relevance apart from showing character conformity.

Because the trial court's decision to admit the extraneous offense evidence is within the zone of reasonable disagreement, there was no abuse of discretion. The judgment of the Court of Appeals is reversed, and the cause remanded to that

court so that it may consider appellant's remaining points of error.

KEASLER, J., concurred.